ANGELA GINGERICH,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Plaintiff⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀Case No. 2:10 cv 276
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
CITY OF ELKHART PROBATION⠀)
DEPARTMENT; CITY OF ELKHART;⠀)
HON. CHARLES H. GRODNIK and⠀)
CHIEF PROBATION OFFICER ANTHONY)
WEAVER, in their official⠀⠀)
capacities,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Defendants⠀⠀)

## OPINION AND ORDER

This matter is before the court on the Motion to Compel or, in the Alternative, Motion for In Camera Review [DE 20] filed by the plaintiff, Angela Gingerich, on November 24, 2010. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

## Background

This matter arises from the claim of the plaintiff, Angela Gingerich, that she was retaliated against after filing a complaint alleging sexual harassment and a sexually harassing work environment created by her direct supervisor, Chief Probation Officer Anthony Weaver. Gingerich also filed a claim for negligence and negligent retention for the continued employment of Weaver due to his alleged past discipline for engaging in sexual

activity with another member of the Probation Department staff.
Gingerich additionally complains that the defendants interfered
with her right to take a medical leave pursuant to the Family and
Medical Leave Act.  The defendant, City of Elkhart Police Depart-
ment, admits that Gingerich complained about Weaver, but it
denies that any of the alleged events took place.  Elkhart also
asserts that it acted in good faith and took reasonable steps to
investigate Gingerich's complaints of harassment and retaliation.

In an effort to conduct discovery, Gingerich sent Elkhart a
series of interrogatories and requests for production.  To date,
Gingerich argues that Elkhart failed to provide complete re-
sponses to her first, fourth, sixth, seventh, and eleventh
interrogatories.  Elkhart also failed to produce the documents
Gingerich requested in her first, second, third, fourth, elev-
enth, and fourteenth requests for production, arguing that the
requested documents are privileged under the attorney-client,
work product, or deliberative process privileges.  Gingerich now
moves to compel responses to her interrogatories and requests for
production.

## Discussion

A party may "obtain discovery regarding any matter, not
privileged, that is relevant to the claim or defense of any
party, including the existence, description, nature, custody,

condition and location of any books, documents, or other tangible things." Federal Rule of Civil Procedure 26(b)(1). For discovery purposes, relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Chavez v. DaimlerChrysler Corp., 206 F.R.D. 615, 619 (S.D. Ind. 2002)(quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard. Borom v. Town of Merrillville, 2009 WL 1617085, *1 (N.D. Ind. June 8, 2009) (citing Sanyo Laser Prods., Inc. v. Arista Records, Inc., 214 F.R.D. 496, 502 (S.D. Ind. 2003)). See also Adams v. Target, 2001 WL 987853, *1 (S.D. Ind. July 30, 2001)("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."); Shapo v. Engle, 2001 WL 629303, *2 (N.D. Ill. May 25, 2001)("Discovery is a search for the truth.").

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Federal Rule of Civil Procedure 37(a)(2)-(3). The burden "rests upon the objecting

3

party to show why a particular discovery request is improper."
Gregg v. Local 305 IBEW, 2009 WL 1325103, *8 (N.D. Ind. May 13,
2009)(citing Kodish v. Oakbrook Terrace Fire Protection Dist.,
235 F.R.D. 447, 449-50 (N.D. Ill. 2006)); McGrath v. Everest Nat.
Ins. Co., 2009 WL 1325405, *3 (N.D. Ind. May 13, 2009)(internal
citations omitted); Carlson Restaurants Worldwide, Inc. v.
Hammond Professional Cleaning Services, 2009 WL 692224, *5 (N.D.
Ind. March 12, 2009)(internal citations omitted).  The objecting
party must show with specificity that the request is improper.
Cunningham v. Smithkline Beecham, 255 F.R.D. 474, 478 (N.D. Ind.
2009)(citing Graham v. Casey's General Stores, 206 F.R.D. 253,
254 (S.D. Ind. 2002)).  That burden cannot be met by "a reflexive
invocation of the same baseless, often abused litany that the
requested discovery is vague, ambiguous, overly broad, unduly
burdensome or that it is neither relevant nor reasonably calcu-
lated to lead to the discovery of admissible evidence."  Cunning-
ham, 255 F.R.D. at 478 (citing Burkybile v. Mitsubishi Motors
Corp., 2006 WL 2325506, *6 (N.D. Ill. Aug. 2, 2006))(internal
quotations and citations omitted).  Rather, the court, under its
broad discretion, considers "the totality of the circumstances,
weighing the value of material sought against the burden of
providing it, and taking into account society's interest in
furthering the truth-seeking function in the particular case

4

before the court."  Berning v. UAW Local 2209, 242 F.R.D. 510,
512 (N.D. Ind. 2007)(examining Patterson v. Avery Dennison Corp.,
281 F.3d 676, 681 (7th Cir. 2002))(internal quotations and cita-
tions omitted).

Gingerich's first interrogatory questioned whether the
defendant was properly identified in the caption.  The defendant
responded that "there is an agency within the City of Elkhart
designated as the Elkhart Probation Department; however, Defen-
dant denies that Plaintiff has named the proper entity as a
Defendant in this cause."  (Pltf. Br. Ex. 1)  In Gingerich's
brief filed in support of her motion to compel, she argues that
the defendant's counsel orally stated that the City of Elkhart is
a proper party and that the defendant must state this in a sworn
response to the interrogatory.  The defendant responded that it
is Gingerich's burden, not the defendant's, to identify the
proper parties, and that this interrogatory elicits an improper
legal conclusion.

Interrogatories are not objectionable merely because they
call for an opinion or contention that relates to a fact or its
application.  Federal Rule of Civil Procedure 33 (committee
notes).  Opinions that call for the application of law to the
facts can be helpful in conducting discovery.  Rule 33 (committee
notes).  However, interrogatories may not be extended to issues

of pure law that are unrelated to the facts of the case.  Rule 33
(committee notes); Gregg v. Local 305 IBEW, 2010 WL 556526, *4
(N.D. Ind. Feb. 9, 2010); Strode v. Venice, 2007 WL 294263, *7
(S.D. Ill. Jan. 30, 2007).  For this reason, opposing parties
cannot be compelled to respond to interrogatories that call for
pure legal conclusions.  Gregg, 2010 WL 556526 at *4; Strode,
2007 WL 294263 at *7.

Gingerich's first interrogatory does not appear to elicit an
impermissible legal conclusion.  Interrogatory 1 questioned
whether the Elkhart Probation Department was properly named.  The
court interprets this to mean whether the defendant's name was
correctly identified in the caption.   However, Gingerich's
motion transforms this request, asking the defendant to conclude
whether it is the proper defendant, or whether another entity of
the Elkhart government should be named in its place.  While the
party may inquire about information necessary to serve parties,
or information that might otherwise reveal individuals who should
be named as a party to the suit, the burden of identifying the
proper defendant is one the plaintiff carries.  See State of Ill.
v. Ampress Brick Co., Inc., 67 F.R.D. 457, 460 (N.D. Ill. 1975)
(holding that the plaintiff could not force defendants by discov-
ery to determine which political subdivisions were properly
joined and had an interest in the action).  See e.g. Rendall-

Speranza v. Nassism, 107 F.3d 913, 918 (D.C. Cir. 1997) (denying motion to name the correct party as a defendant because nothing in Federal Rule of Civil Procedure 15 indicates that it applies to a plaintiff who was aware of the defendant's identity but not its responsibility); Louisiana-Pacific v. ASARCO, Inc., 5 F.3d 431, 434 (9th Cir. 1993) (holding that a plaintiff mistaken about which of two parties was the proper one to sue may not amend its complaint to correct its mistake and avoid the statute of limitations).

In Ampress, the court denied the plaintiff's request to force the defendants through discovery to determine which political subdivisions were properly joined and had an interest in the action. 67 F.R.D. at 459-60. The court determined that it was the plaintiff's burden to make this determination, and that such burdens could not be delegated through discovery. Accordingly, the court assigned the burden to the plaintiff to determine the correct parties to the suit. Ampress, 67 F.R.D. at 460.

Interrogatory No. 1, as refined by Gingerich's motion, seeks to elicit a legal conclusion from the defendant. Gingerich is requesting Elkhart to conclude whether it is the proper party to the suit. Because this is Gingerich's burden that she cannot delegate through discovery, Elkhart cannot be compelled to

respond to Interrogatory No. 1.  Gingerich's motion to compel is accordingly DENIED with respect to Interrogatory No. 1.

In Interrogatory and Request for Production No. 11, Gingerich inquired about Weaver's disciplinary record and asked Elkhart to produce his personnel file, including all disciplinary and suspension records.  More specifically, Gingerich asked Elkhart to identify and state the title of any individuals who administered the discipline, the current title and position of the individuals identified in the first part, their addresses and phone numbers, the dates the disciplinary actions were taken, the type of discipline, the alleged statement or action for which Weaver was disciplined, and the identity of the custodian of written discipline documents.  Elkhart objected, stating that both requests were not relevant or reasonably calculated to lead to admissible evidence.  The basis of Elkhart's claim that this information is not relevant to Gingerich's complaint is not clear because in addition to her complaints of sexual harassment, Gingerich also has raised a claim for negligent retention.

To succeed on a negligent retention claim, Gingerich has the burden of establishing the following elements: "(1) a duty of care owed by an employer to a third person; (2) breach of that duty; and (3) injury to the third person proximately caused by the employer's breach."  Scott v. Retz, 916 N.E.2d 252, 257 (Ind.

App. 2009).  Under the first prong, to determine whether a duty of care will be imposed, the court considers the relationship between the parties, the foreseeability of harm to the injured person, and public policy concerns.  Sandage v. Board of Commissioners of Vanderburgh County, 897 N.E.2d 507, 512 (Ind. App. 2008).  "Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm."  Sandage, 897 N.E.2d at 512 (citing Webb v. Jarvis, 575 N.E.2d 992, 995 (Ind. 1991)).  "[T]he master may subject himself to liability . . . by retaining in his employment servants who, to his knowledge, are in the habit of misconducting themselves in a manner dangerous to others."  Sandage, 897 N.E.2d at 512.

Because Gingerich bears the burden of showing the foreseeability of the resulting harm, Weaver's past disciplinary records are pertinent to Gingerich's claim.  By establishing a past pattern of similar harassment, Gingerich can show that her injury was foreseeable and that Elkhart was negligent in continuing to employ Weaver despite his past disciplinary record.  Therefore, the information is relevant, and Elkhart has failed to meet is burden in establishing why this information is not discoverable.  Gingerich's motion is GRANTED with respect to Interrogatory and Request for Production No. 11.

In Interrogatory Nos. 4, 6, and 7, Gingerich inquired about the reports given by the individuals who reported to Judge Charles Grodnik that Gingerich padded her appointment book with false appointment times and for the identity of all witnesses who were contacted during the investigation of Gingerich's charges against Weaver and the content of their statements.  Gingerich also submitted several requests for production, asking for documents related to her employment, for communications, interview notes, and documents relating to her allegations against Weaver and Elkhart's investigation, and for any insurance policies relating to the claim.  Elkhart objected to all of these remaining interrogatories and requests for production on the grounds of privilege.  Elkhart argues that all of the communications, emails, records, letters, notes or other documents prepared by the Elkhart City Attorney's Office are protected by the attorney-client communication and work product privileges, and that any communications, emails, records, letters, notes or other documents regarding the investigation of Gingerich's complaint of sexual harassment or termination are protected by the deliberative process privilege.

The attorney-client privilege protects communications between a client and his lawyer.  "[T]he privilege exists to protect not only the giving of professional advice to those who

can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."  Upjohn Co. v. United States, 449 U.S. 383, 390, 101 S.Ct. 677, 683, 66 L.Ed.2d 584 (1981).  The Seventh Circuit applies the privilege under the following principles:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.
>
> United States v. White, 950 F.2d 426, 430 (7th Cir. 1991)

The party claiming the privilege bears the burden of establishing that all of the requirements for invoking the attorney-client privilege are met.  Id.  "The claim of privilege cannot be a blanket claim; it must be made and sustained on a question-by-question or document-by-document basis."  Id. (citing United States v. Lawless, 709 F.2d 485, 487 (7th Cir. 1983))(internal quotation omitted).

"The work product privilege is distinct from and broader than, the attorney-client privilege."  Broadnax v. ABF Freight Systems, Inc., 1998 WL 474099, *1 (N.D. Ill. 1998).  The work product doctrine is codified in Rule 26(b)(3) as follows:

> Ordinarily, a party may not discover documents and tangible things that are prepared

11

> in anticipation of litigation or for trial by
> or for another party or its representative
> (including the other party's attorney, con-
> sultant, surety, indemnitor, insurer, or
> agent).  But, subject to Rule 26(b)(4), those
> materials may be discovered if:  (i) they are
> otherwise discoverable under Rule 26(b)(1);
> and (ii) the party shows that it has substan-
> tial need for the materials to prepare its
> case and cannot, without undue hardship,
> obtain their substantial equivalent by other
> means.  .  .  .  If the court orders discov-
> ery of those materials, it must protect
> against disclosure of the mental impressions,
> conclusions, opinions, or legal theories of a
> party's attorney or other representative
> concerning the litigation.

See also Boyer v. Gildea, 257 F.R.D. 488, 490 (N.D. Ind. 2009)

(applying the Rule).  To meet the qualified immunity from discov-

ery based on Rule 26(b)(3), the materials sought must be:  "(1)

documents and tangible things; (2) prepared in anticipation of

litigation or for trial; and (3) by or for a party or by or for a

party's representative."  Boyer, 257 F.R.D. at 490 (citing

Wright, Miller & Marcus, 8 Federal Practice & Procedure §2024 (3d

ed.)).

The threshold determination is whether the documents sought

to be protected were prepared in anticipation of litigation or

for trial.  Caremark, Inc. v. Affiliated Computer Services, Inc.,

195 F.R.D. 610, 614 (N.D. Ill. 2000).  The test for each document

is "whether, in light of the nature of the document and the

factual situation in the particular case, the document can fairly

be said to have been prepared or obtained because of the prospect of litigation."  Id. (citing and quoting Binks Mfg. Co. v. National Presto Indus., Inc., 709 F.2d 1109, 1118-19 (7th Cir. 1983).  Precedent is clear that eventual litigation does not ensure protection of all materials prepared by attorneys — the "remote prospect of future litigation" does not suffice to bring the work product doctrine into play.  Id. at 1120.  Materials or investigative reports developed in the ordinary course of busi- ness do not qualify as work product.  The doctrine applies only if the material or report came into existence because of the litigation or because of an existing articulable claim likely to lead to litigation.  Caremark, 195 F.R.D. at 614.

Similarly, the deliberative process privilege is a federal common law privilege that "protects communications that are part of the decision-making process of a governmental agency." United States v. Farley, 11 F.3d 1385, 1389 (7th Cir. 1993); Anderson v. Marion County Sheriff's Department, 220 F.R.D. 555, 560 (S.D. Ind. 2004).  See also Department of the Interior v. Klamath Water Users Protective Association, 532 U.S. 1, 8, 121 S.Ct. 1060, 1065-66, 149 L.Ed.2d 87 (2001) (explaining the rationale behind the privilege). In order for the privilege to apply, the communi- cation must be (1) pre-decisional and (2) deliberative. See Anderson, 220 F.R.D. at 560 (quoting Becker v. Internal Revenue

Service, 34 F.3d 398, 403 (7th Cir. 1994)). The Seventh Circuit recently adopted the definitions of these terms set forth by the Court of Appeals for the District of Columbia. See Enviro Tech International, Inc. v. United States Environmental Protection Agency, 371 F.3d 370, 375 (7th Cir. 2004) (quoting Jordan v. United States Department of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978)). According to the Seventh Circuit, the communication must be "predecisional in the sense that it is actually antecedent to the adoption of an agency policy, and deliberative in the sense that it is actually related to the process by which policies are formulated." (internal quotation and alteration omitted). The party asserting the privilege bears the burden of establishing "both its existence and applicability" at this first step. Allen v. Chicago Transit Authority, 198 F.R.D. 495, 501 (N.D. Ill. 2001). To meet its burden, the government agency must show:

> (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; (3) the official must specifically identify and describe the documents.

> Anderson, 220 F.R.D. at 561

See also K.L., L.F., and R.B. v. Edgar, 964 F.Supp. 1206, 1209 (N.D. Ill. 1997).

Interrogatory No. 4 asked Elkhart to provide the identities of all individuals who reported to Judge Grodnik that Gingerich padded her appointment book with false appointment times, and for their positions, dates of reports, contents of reports, and a complete list of appointment times allegedly padded. Elkhart's response reads in its entirety, "Tony Weaver, Sue Smith, Shaneen Haley and Stacy Denton. All reports were verbal and were given in early December 2008 and March of 2009." Elkhart argues that a further response is protected by privilege but fails to cite to the specific privileges it is claiming.

Although Elkhart carries the burden of establishing that these requests are protected by privilege, Elkhart has done little more than make a blanket assertion. Such a generalized claim clearly fails to satisfy its burden to show that the requested information is protected by a privilege. White, 950 F.2d at 430 ("The burden falls on the party seeking to invoke the privilege to establish all the essential elements."). Therefore, even if the court assumed that Elkhart properly asserted the privileges it identified in response to Gingerich's requests for production in response to Interrogatory 4, namely the work product, attorney-client, and deliberative process privileges, without more explanation, Elkhart has not satisfied its burden.

The work product privilege protects the attorney's mental processes and documents prepared in anticipation of litigation from discovery.  However, factual interrogatories concerning the identities of potential witnesses who were interviewed and the substance of their statements do not provide insight into the attorney's mental process.  See E.E.O.C. v. Jewel Food Stores, Inc., 231 F.R.D. 343, 346 (N.D. Ill. 2005)(finding that an interrogatory request asking for the identities of individuals with information and the substance of the information they possess and statements they have made does not fall within the work product privilege because it does not reveal anything about the attorney's mental process).  This is because "[a] witness may not be interviewed for a number of reasons that do not bear on his or her importance. Moreover, a witness who has been inter-viewed may turn out to be unimportant, while a witness who has yet to be interviewed might be critical." Jewel, 231 F.R.D. at 347.  Interrogatories concerning the identity of individuals who may have information and the content of any statements they provided is the type of factual inquiry that is routinely sought in discovery.  Jewel, 231 F.R.D. at 347.  "Competent counsel routinely obtain information through interviewing witnesses and reviewing documents, and are able to provide interrogatory responses that set forth only that factual information without

revealing 'mental processes, impressions and strategies.'" Jewel,
231 F.R.D. at 347.

Assuming Elkhart has asserted the work product privilege to
the extent that it obtained the relevant information during the
course of its investigation, Gingerich's fourth interrogatory
solicited the same information as sought by the plaintiff in
Jewel. In this interrogatory, Gingerich has sought information
concerning potential witnesses and their knowledge about this
case. Revealing the identity of the individuals who told Judge
Godnik that Gingerich padded her book and providing a summary of
their statements reveals nothing about Elkhart's litigation
strategy and mental processes, even if this information was re-
vealed to its attorneys through their interviews. To a large
extent, the information sought by Interrogatory No. 4 falls more
squarely within the scope of discovery than in Jewel because
Gingerich has not asked who was interviewed, what the investiga-
tion revealed, or for the source of Elkhart's information.
Rather, Interrogatory No. 4 has requested the type of factual
information that is routinely sought in discovery and will not be
shielded by privilege.

Similarly, the attorney-client privilege protects statements
a client makes to his lawyer while seeking legal advice. Upjohn,
449 U.S. at 390, 1010 S.Ct. 677. Not only did Elkhart fail to

show that Interrogatory No. 4 sought statements made in the course of seeking legal advice, but the plain language of the interrogatory requested communications between the individuals and Judge Godnik, not Elkhart's attorney. Such information does not become protected simply because Elkhart's attorneys may have uncovered this information during the investigation. Degante v. Loiacono, 2004 WL 1171755, *1 (N.D. Ill. Feb. 23, 2004).

Finally, Elkhart's response was devoid of any explanation on how Interrogatory No. 4 elicited information that was part of the decision-making process of a governmental agency and protected from discovery by the deliberate-process privilege. Elkhart has the burden of showing that the information is antecedent to the adoption of an agency policy, and to do so it must show:

> (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demon-strate, typically by affidavit, precise and certain reasons for preserving the confiden-tiality of the documents in question; (3) the official must specifically identify and de-scribe the documents.

> Anderson, 220 F.R.D. at 561

See also K.L., L.F., and R.B., 964 F.Supp. at 1209. Elkhart has not referred the court to a policy, and assuming the policy Elkhart referred to was Gingerich's termination or its decision to retain Weaver, Elkhart has failed to submit any of the evi-

18

dence necessary to take advantage of the deliberate-process privilege.

After making this blanket assertion of privilege, Elkhart stated that it identified the individuals in question and that Gingerich's counsel can conduct depositions if she desires further information. "Interrogatories are not improper simply because the same information can be obtained by use of a different discovery procedure." In re Folding Carton Antitrust Litigation, 83 F.R.D. 256, 259 (N.D. Ill. 1979); Alden v. Wilson Jones Co., 1987 WL 18339 (N.D. Ill. 1987) (citing 8 Wright & Miller, Federal Practice & Procedure, §2169). Rather, an interrogatory can relate to any matter that may be inquired into under Rule 26(b), and the responding party is required to answer to the extent that it has knowledge or such is readily ascertainable unless it has a valid objection. Rule 33(a)(2); United States v. 3963 Bottles, 265 F.2d 332, 336 (7th Cir. 1959); Loft, Inc. v. Corn Products Refining Co., 103 F.2d 1, 6 (7th Cir. 1939) ("As to some of the matters defendants claim that they have no knowledge, and such an answer is sufficient unless as a matter of law they are required to have knowledge.").

Gingerich's interrogatory is relevant to her claims and falls within the scope of Rule 26(b). Because Elkhart did not sufficiently establish a privilege, it lacks a valid objection to

Gingerich's interrogatory and cannot avoid responding based on the sole reason that it objects to the form of discovery. Therefore, Elkhart must respond to the extent that it has personal knowledge or such is reasonably attainable, although the extent of its knowledge appears to remain in dispute.

Government agencies, like corporations, can appoint an agent to respond to interrogatories. The responding agent does not have to have personal knowledge of the events, but he must verify the answers he provides on behalf of his employer. See Shepherd v. American Broadcasting Companies, Inc., 62 F.3d 1469, 1482 (D.C. Cir. 1995) ("Federal Rule of Civil Procedure 33 expressly permits a representative of a corporate party to verify the corporation's answers without personal knowledge of every response by 'furnish[ing] such information as is available to the party.'"). In completing this task, the agent must respond to the extent that such information is reasonably obtainable and within the possession, custody, or control of the agency. Tyler v. Suffolk County, 256 F.R.D. 34, 38 (D. Mass. 2009)(finding that officers sued in their official capacity had to respond to discovery requests with all the obtainable information in their possession, custody, or control, including records maintained by the prison, and not just rely on their personal knowledge).

Although lack of knowledge is a permissible response, Elkhart has not clearly made this assertion, nor has it stated that the information is not within its possession, custody, or control. Elkhart broadly asserted that Gingerich believes it is the defendant's duty to collect this information for purposes of responding to the interrogatory. The court cannot discern from this statement whether Elkhart has claimed that such information is not available to it, or whether the information is within its control, but it does not believe it has the burden to piece it together to form a response to Gingerich's interrogatory. However, the burden rests on Elkhart to show that the discovery request was improper. Absent a valid assertion that it lacks the requisite knowledge to respond or that such information is not within its possession, custody, or control, Elkhart has failed to satisfy its burden. For these reasons, Gingerich's motion is GRANTED with respect to Interrogatory No. 4.

Interrogatory Nos. 6 and 7 made similar inquiries and asked Elkhart to identify the witnesses who were contacted during the investigation of Gingerich's charges against Weaver, for those individual's contact information, whether each witness signed a written statement, and for a synopsis of the witness' statements. These requests must be more closely scrutinized to determine if they fall within the attorney-client or work product privileges

because they seek to elicit information regarding Elkhart's investigation. However, in similar situations courts have recognized that such requests are directed to permissible factual information, not impermissible mental impressions. Jewel, 231 F.R.D. at 346. The plaintiff in Jewel asked for the identities and statements made by potential witnesses. Jewel argued that the request fell within the work product privilege because counsel obtained the information through interviewing witnesses and reviewing documents and could not set forth the factual information without revealing its mental processes, impressions, and strategies. Jewel, 231 F.R.D. at 346. The court disposed of Jewel's privilege claim, reasoning that revealing the identity of the individuals who were interviewed during the defendant's investigation revealed little or nothing about what that party considered important. Jewel, 231 F.R.D. at 347. The court further reasoned that the information did not compromise the work product doctrine because the EEOC's interrogatory did not inquire into whether the identified individuals were interviewed by Jewel or its attorneys. Jewel, 231 F.R.D. at 347.

Gingerich's request made a similar inquiry and asked who interviewed the witnesses and for what purpose. Gingerich's Interrogatory delved more specifically into the nature of the interview between the potential witnesses and Elkhart. In Jewel,

the EEOC's interrogatory asked for the identities of individuals
who had information, the substance of that information, and any
statements those individuals made.  231 F.R.D. at 346. However,
Gingerich's request was more limiting and specifically inquired
into the substance of the interviews conducted by Elkhart to
investigate the claims.  For this reason, Gingerich's request
posed a greater risk for giving significant insights into
Elkhart's preparation of its case.  See Board of Education of
Evanston Township High School v. Admiral Heating, 104 F.R.D. 23,
32 (N.D. Ill. 1984).  Therefore, Elkhart must respond to discov-
ery requests 6 and 7 parts a-f, and part h.  Gingerich then will
have access to information she needs to locate the witnesses.
Elkhart will not be required to provide information its attorney
uncovered during the investigation or revealing the litigation
strategy.

Turning now to Gingerich's requests for production, her
first request asked Elkhart to produce all documents regarding
Gingerich's employment, including her personnel file, payroll
records, employee benefits, documents relating to her termina-
tion, job performance, FMLA leave, disciplinary record, promo-
tability, and employment relationship with the Probation Depart-
ment.  Elkhart responded that Gingerich's requests for documents
relating to her promotability and relationship with the Probation

Department were vague and over broad and that it would not produce the relevant items referenced in its privilege log. However, Elkhart's objections were boilerplate and lacked any substantive reason. See Boyer v. Gildea, 2008 WL 4911267, *4 (N.D. Ind. Nov. 13, 2008). The defendant's "burden cannot be met by 'a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" McGrath, 2008 WL 2518710 at *10 (quoting Burkybile, 2006 WL 2325506 at *6). Without a more adequate explanation, Elkhart is required to respond to subparts (h) and (i) of Gingerich's first request for production.

Request for Production No. 2 asked Elkhart to disclose all written communications, emails, notes, letters, interview notes, and documents of any kind from any and all sources regarding Gingerich's allegations against Weaver of sexual harassment, a sexually hostile work environment, retaliation, and her requests for FMLA leave. Request No. 3 asked for all records, notes, correspondence, witness statements, written documents and communications made by all sources that were used during the investigation of Gingerich's complaints that Weaver sexually harassed her and created a sexually hostile work environment. Request No.

4 asked for documents and communications made by all sources in conjunction with or utilized in any way during the investigation of Gingerich's allegations and complaints that she was being retaliated against for complaining of Weaver's sexual harassment and the creation of a sexually hostile work environment.  Elkhart has objected on the grounds of attorney-client privilege, work product privilege, and deliberation privilege, and it submitted a privilege log of the documents relating to these requests.  The documents and communications sought from these interrogatories were primarily of two kinds: the notes taken by in-house counsel when interviewing potential witnesses and the human resource interview notes.

Elkhart first argues that any communications, notes or other documents prepared by the Elkhart City Attorney's Office are protected by the attorney-client communication and work product privilege.  Elkhart relies on Sandra T.E. v. South Berwyn School Dist. 100, 600 F.3d 612 (7th Cir. 2010) in support of its argument.  In Sandra, the attorney performed investigative work and recorded notes of his investigation.  The Seventh Circuit analyzed Upjohn Co., 449 U.S. at 394-399, 101 S.Ct. at 677 and its progeny as similar situations arose in other circuits.  In Upjohn, the Supreme Court concluded that factual investigations performed by attorneys in their roles as attorney fell within the

attorney-client privilege.  449 U.S. at 394; 101 S.Ct. at 685. In Upjohn, a corporation's in house counsel investigated several employees for their potential role in making illegal payments to foreign government officials.  449 U.S. at 386-87; 101 S.Ct. at 681. The attorney's investigation included interviews with corporate officers and employees.  Upjohn, 449 U.S. at 387; 101 S.Ct. at 681. The Supreme Court concluded that the attorney-client privilege remained applicable because "[t]he first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant."  Upjohn, 449 U.S. at 390-91; 101 S.Ct. 677. See also Trammel v. United States, 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) ("The lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out.").  Relying on this reasoning, the Fourth Circuit explained that clients "often do retain lawyers to perform investigative work because they want the benefit of a lawyer's expertise and judgment," and "if a client retains an attorney to use her legal expertise to conduct an investigation, that lawyer is indeed performing legal work."  In re Allen, 106 F.3d 582, 604 (4th Cir. 1997).  The Seventh Circuit adopted this reasoning to conclude that the investigation per-

formed by the attorney the school board retained was an integral part of the legal services for which he was hired and a necessary prerequisite to the provision of legal services.  Sandra, 600 F.3d at 620.

Gingerich has attempted to distinguish Sandra, arguing that counsel's role in the investigation at Elkhart was somehow different because counsel was in house counsel. However, Upjohn specifically considered in house counsel's role in investigating a potential claim and held that the attorney-client privilege applied.  Upjohn, 449 U.S. at 386, 101 S.Ct. at 681.  The distinguishing factor is whether the attorney became involved so that his expertise was used to conduct the factual investigation. Sandra, 600 F.3d at 620.  Given the history between Gingerich and Elkhart, at the time the attorney's office became involved in the investigation, the risk of a lawsuit seemed apparent.  The factual investigation was important not only for Elkhart's records but also to determine how it should respond to any potential suit.  For this reason, counsel's role in the investigation served purposes other than to aid human resources - it also was a fact finding mission to prepare its defense.  See Sandra, 600 F.3d at 620.  Given this purpose, the work product privilege operates to prevent discovery of the notes counsel prepared as part of the investigation.  Elkhart is not required

to provide complete responses to the requests for production Nos. 2, 3, and 4 to the extent that they request notes prepared by counsel, specifically privilege log numbers 20-30 and 37. Additionally, the e-mail correspondence exchanged between the city attorney, the human resource director, and Judge Godnik (Privilege Log Nos. 11, 14, and 16) are protected from discovery through this privilege because the attorney's role was to guide the investigation and identify the facts that would improve its defense. Because the city attorney was acting in her role as attorney, these privileges prevent disclosure through discovery.

Elkhart next asserts that the notes recorded by the human resource personnel fall within the deliberation privilege. However, beyond a blanket assertion that the communications Gingerich requested are within the deliberation privilege, Elkhart does little more to explain how the deliberation privilege applies to the requested documents. The defendant summarized the law and concluded, "Here, the communications and documents that Plaintiff seeks were clearly created in the context of the decision-making process of a governmental agency – both regarding Plaintiff's claim of sexual harassment against her supervisor and the decision to terminate Plaintiff – and are therefore privileged from disclosure. (Defts. Br. p. 9)

The deliberation privilege prevents discovery of communications used by the government in formulating a policy.  United States v. Farley, 11 F.3d 1385, 1389 (7th Cir. 1993).  The communication must be both predecisional "in the sense that it is actually antecedent to the adoption of an agency policy", or deliberative "in the sense that it is actually related to the process by which policies are formulated." (internal quotation and alteration omitted). The party asserting the privilege bears the burden of establishing "both its existence and applicability".  Allen, 198 F.R.D. at 501. To meet its burden, the government must show:

> (1) the department head with control over the matter must make a formal claim of privilege, after personal consideration of the problem; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving the confidentiality of the documents in question; (3) the official must specifically identify and describe the documents.

> Anderson, 220 F.R.D. at 561

See also K.L., L.F., and R.B., 964 F.Supp. at 1209.

Elkhart failed to submit any of the required evidence to show that the deliberative privilege applies.  Elkhart has not referred the court to a policy that was formulated based on contemplation of these communications, nor has Elkhart provided precise and certain reasons for preserving the confidentiality of

the documents.  Because Elkhart's boilerplate blanket assertion of privilege does not satisfy its burden, Gingerich's motion to compel production of the notes taken by the human resource personnel during their investigation, Privilege Log Nos. 1-7, is GRANTED.

This same failure to explain how the deliberative process privilege applies to the requested communications requires the court to compel Elkhart to produce the e-mails the human resource director sent to other personnel as well as the e-mails Judge Godnik sent to Elkhart's human resource director and Weaver.  For these reasons, Elkhart must produce the documents identified as Privilege Log Nos. 1-7, 12, 13, 15, 17, and 18, as well as the e-mails Judge Godnik sent to the human resource director and Weaver identified in Privilege Log No. 16, in accordance with Requests for Production Nos. 2, 3, and 4.

To the extent that Gingerich is claiming that Elkhart has additional information relating to Requests for Production Nos. 2, 3, and 4 that were not listed in the Privilege Log, Elkhart has failed to satisfy its burden and has waived any claim of privilege.  See Wright v. United States, 139 F.3d 551, 553 (7th Cir. 1998)(discussing that an argument is waived if not addressed in the party's brief).  Therefore, Elkhart must provide complete responses to these requests.

Finally, in Gingerich's prayer for relief she requests the court to compel Elkhart to respond to her fourteenth request for production. Her fourteenth request asks Elkhart to produce all insurance policies applicable to this cause. Elkhart responded that it would make a copy of the policy available for inspection upon request. Beyond her prayer for relief, Gingerich did not argue or show how this response was inadequate. Parties are permitted to respond to discovery requests by making documents and information available to the opposing side. Federal Rule of Civil Procedure 34(a)(2). Therefore, the defendant's response was complete and the court DENIES Gingerich's motion to compel a response to her Request for Production No. 14.

————————————

Based on the foregoing, the Motion to Compel or, in the Alternative, Motion for In Camera Review [DE 20] filed by the plaintiff, Angela Gingerich, on November 24, 2010, is GRANTED IN PART and DENIED IN PART. Elkhart is COMPELLED to respond to Interrogatory Nos. 4, 6-7 (a)-(f), (h), and 11, and to produce the documents requested in Requests for Production Nos. 1 and 11, as well as the communications and documents prepared and communications by the Human Resource Director, Privilege Log Nos. 1-7, 12, 13, 15, 17, and 18. Elkhart also must also produce the e-mails Judge Godnik sent to people other than the city attorney,

Privilege Log No. 16.  Elkhart does not have to provide further response to Request for Production Nos. 2,3, and 4 to the extent that Gingerich requests the city attorney's investigation notes and other communications, specifically, Privilege Log Nos. 11, 14, and the e-mails exchanged between Judge Godnik and the city attorney referred to in Privilege Log No. 16.  Elkhart also must produce any other documents relating to Requests for Production Nos. 2, 3, and 4 not identified on the privilege log that were not prepared by its attorney.

ENTERED this 8th day of February, 2011

s/ ANDREW P. RODOVICH
United States Magistrate Judge